## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Target Corporation,                                  Court File:11-CV-2429 JNE/LIB

                          Plaintiff,

v.                                       **DEFENDANT'S MEMORANDUM OF**
                                         **LAW IN OPPOSITION TO TARGET**
                                         **CORPORATION'S MOTION FOR**
All Jersey Janitorial Service, Inc.,     **SUMMARY JUDGMENT**

                          Defendant.

---

## <u>INTRODUCTION</u>

Plaintiff Target Corporation ("Target") wishes to be spared the "hassle" of proving their claims to recover more than $300,000 of workers' compensation benefits paid for six of its retail store employees who were injured in separate workplace accidents scattered throughout the eastern United States.   The only sin which brought Defendant All Jersey Janitorial Service, Inc. ("All Jersey") into this strange lawsuit was that All Jersey was Target's custodial services contractor at the time of each accident.   Target has not asserted any tort claims and does not allege that All Jersey did anything wrong to cause each accident.

Target's entire claim (and its motion for summary judgment) is premised on an indemnity provision in the service contracts between Target and All Jersey.   In addition to the procedural unfairness of litigating the merits of six completely unrelated accidents

in the same lawsuit, Target's indemnity claim has four fatal substantive defects that require Target's motion for summary judgment to be denied.[1]

First, in *D.W. Hutt Consultants, Inc. v. Construction Maintenance Systems, Inc.*, 526 N.W.2d 62 (Minn. Ct. App. 1995) the Minnesota Court of Appeals has already rejected on public policy grounds an employer's attempt to use a contractual indemnity provision to shift its workers' compensation liability to another party. Target is attempting to defy the *D.W. Hutt* decision six times in the same lawsuit without providing any real justification for doing so.

Second, the contract between Target and All Jersey is a maintenance contract within the meaning of Minnesota Statutes section 337.02. The indemnity provision in the contract is unenforceable pursuant to sections 337.02-05 for two separate reasons: (1) the provision would require indemnity for non-negligent acts of All-Jersey; and (2) the service contract did not require All Jersey to maintain the type of insurance coverage (workers' compensation) to protect Target against the risk of loss for which indemnity is sought in this case (Target's liability to injured employees).

Third, the language of the indemnity provision in the contract does not unequivocally require that All Jersey indemnify Target for claims arising from Target's own negligence in every circumstance. Under the contract language, All Jersey is not required to indemnify Target to the extent Target is solely negligent for the accidents. Therefore, the language of the indemnity agreement requires the fact finder to apportion negligence to satisfy Target's burden of proving that the company (and its employees) are

---

[1] All Jersey intends to bring a motion pursuant to Federal Rule of Civil Procedure 20 to sever the claims along with its own motion for summary judgment.

2

not solely negligent for causing each accident. This raises a genuine issue of material fact regarding each accident which precludes summary judgment.

Fourth, Target has not offered any admissible evidence to establish the causal connection between All Jersey's work under the contract, and, each of the six accidents. Target concedes that proving a causal nexus is a required element of its contractual indemnity claims. Nonetheless, Target has offered little more than the say-so of its lawyers to establish – beyond any genuine issue of material fact –  each of these accidents was caused by All Jersey's performance or non-performance of its contractual cleaning services. All that we have from Target is two emails, a few handwritten statements, and some transcribed telephone interviews riddled with hearsay and foundational deficiencies. Target has not shared sworn testimony or affidavits from anyone who was present for these accidents. Without admissible evidence to establish the causal connection that is an essential element of Target's claims, Target's motion for summary judgment must be denied.

## STATEMENT OF FACTS

Plaintiff Target is the owner and operator of a chain of discount department stores across the United States and is headquartered in Minneapolis, Minnesota. Defendant All Jersey is a provider of commercial janitorial services with headquarters in Freehold, New Jersey. On or about September 2, 2005, Target and All Jersey entered into an agreement in which All Jersey was to provide "Housekeeping Services" to a number of Target

Stores across the country.[2]   (Kuderer Aff., Ex. A).   Paragraph 11 of the contract is

entitled "Indemnification" and provides in pertinent part:

> Except as provided herein, Contractor agrees to assume responsibility for
> all injuries or damages to persons or property which relate to or arise out of
> Contractor's performance of Services, Contractor's failure to perform its
> obligations under this Agreement, or the negligence or wrongful acts of
> Contractor or its agents or employees.   Contractor, to include its agents,
> servants, employees, assigns, independent contractors, or anyone else
> retained by Contractor for the performance of Contractor's obligations
> under this Agreement, shall defend, indemnify and hold harmless Target
> and its agents and employees, from and against (1) any and all claims, suits,
> losses, damages, judgments or expenses (including attorney's fees incurred
> in responding to claims or suits) which relate to, arise out of, or are asserted
> or incurred as a result of, Contractor's performance of Services,
> Contractor's failure to perform its obligations under this Agreement, or the
> negligence or wrongful acts of Contractor or its agents or employees; and
> (2) any claims made by Contractor's employees or agents arising out of the
> performance of Services; provided, however, that the foregoing indemnity
> obligations shall not apply to any injury, damage or loss to the extent such
> injury, damage or loss is caused by the sole negligence of Target.   The
> obligations under this paragraph shall survive the termination of this
> Agreement.

(*Id*. at p. 6).   The contract also requires All Jersey to maintain specified insurance.

Paragraph 13 of the contract provides in part:

> Contractor shall maintain, at Contractor's expense, the following insurance:
>
> A. Workers' compensation insurance for *all of its employees* in such amounts as
>    required by applicable law and employer's liability insurance in the amount of
>    $1,000,000;
>    …

---

[2]   Target and All Jersey subsequently amended their contract many times to add
additional retail stores to All Jersey's scope of work.  (See Kuderer Aff., Ex. B-G).  The
amendments did not change the language of the indemnification or insurance provisions
in the original contract.

> B. Commercial general liability insurance with minimum limits of liability of $1,000,000 combined single limit per occurrence and $2,000,000 general aggregate per project.  Such insurance shall provide coverage for completed operations and Contractor's indemnification obligations set forth in this Agreement.
>
> ….

(*Id*. at p. 7).  The contract also required All Jersey to name Target as an additional insured on the specified insurance.  (*Id.*).

The Contract contains a choice of law provision providing in pertinent part as follows:

> **19.    Governing Law.**  This Agreement and performance hereunder shall be governed in all respects by the laws of the State of Minnesota.

(*Id*. at p. 9 (emphasis added)).  There does not appear to be any dispute that Minnesota law applies to this lawsuit.

Between 2006 and 2010, Target received claims for workers' compensation benefits from the following Target employees:  Diana Arango, injured at the Edgewater, NJ store on March 12, 2006; Beverly Hightower, injured at the College Point Queens, NY store on May 31, 2007; Marva Lewis, injured at the Brooklyn College, NY store on April 21, 2009; Delilah Giddings, injured at the Plymouth Meeting, PA store on June 2, 2009; Lynda Russo, injured at a store in Pennsylvania on July 29, 2009; and Michilene Hackett, injured at the Wilmington, DE store on March 7, 2010.

The record offered by Target concerning each of these six unrelated accidents is quite limited.  Here is a brief description of the evidence offered by Target to prove that the circumstances of each accident require indemnity from All Jersey:

- **<u>Diana Arango</u>**.  Target offers the transcripts of two recorded interviews allegedly with Ms. Arango via telephone.  (Kuderer Aff., Ex. V).  However, neither of Arango's interviews was administered under oath.  Furthermore, it is self-evident from both transcripts that all of the answers attributed to Ms. Arango were given by her informal translators – in one interview her workers' compensation attorney and in the other her daughter. (*Id.*). Target also offers an email in which claims representatives from Target's third-party claims administrator (Sedgwick CMS) and All-Jersey's insurance carrier (Swiss Reinsurance America Corporation) discussed their respective understandings regarding the circumstances of Ms. Arango's accident.  (Kuderer Aff., Ex. J).  There is no sworn testimony from Ms. Arango or any eyewitness to her accident.

- **<u>Beverly Hightower</u>**.  Plaintiff has offered only a settlement release executed by Ms. Hightower.  (Kuderer Aff., Ex. K).  The release does nothing more than preserve Target's potential subrogation claim.  Target has not offered any evidence whatsoever regarding the circumstances of Ms. Hightower's accident.

- **<u>Marva Lewis</u>**.   Target offers the transcript of a recorded telephone interview with a person alleged to be Marva Lewis.  (Kuderer Aff., Ex. W). At the outset of the interview, when the subject was asked why the call was being recorded, the Sedgwick representative conducting the interview stated, "Uh, due to the fact that it's a slip and fall from the cleaning crew."

(*Id*. at p. 1).   Despite the heavily suggestive interview process, Ms. Lewis stated that she was "not sure" what she slipped on.   (*Id.* at p. 3).   In addition, Target offers two very short, un-authenticated handwritten statements from individuals named April Williams and Devine Jayle. (Kuderer Aff., Ex. L and M).   There is no sworn testimony from Lewis, Williams or Jayle.

- **<u>Delilah Giddings</u>**.  Target offers an un-authenticated one-page handwritten statement from a person identified only as "Tanya" concerning a few details about the circumstances of an accident involving "Deliah."  (Kuderer Aff., Ex. N).  It is not a sworn statement.  There is no sworn testimony from Ms. Giddings or from "Tanya."  (*Id.*).

- **<u>Lynda Russo</u>**.   Target offers an un-authenticated three-sentence email apparently authored by Target employee Laurie Lombardo, whose message offers no description of the circumstances of Ms. Russo's accident. (Kuderer Aff., Ex. O).  There is no sworn testimony from Ms. Lombardo or Ms. Russo.

- **<u>Michilene Hackett</u>**.   Target offers the transcript of an audio-recorded interview of a person purporting to be Michilene Hackett concerning her accident.  (Kuderer Aff., Ex. P).  Ms. Hackett stated in her interview that she slipped on a puddle of water, but she did not know where it came from. (*Id*. at p. 4).  There is no sworn testimony from Ms. Hackett.

Target initiated this action on or about August 24, 2011, asserting that under the indemnity clause in the subcontract, All Jersey is obligated to indemnify Target for the workers' compensation benefits Target paid to its own employees.

## ARGUMENT

## I.   SUMMARY JUDGMENT STANDARD

Summary Judgment is appropriate when the evidence demonstrates that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(a); *Smutka v. City of Hutchinson*, 451 F.3d 522, 526 (8th Cir. 2006). The moving party bears the burden of bringing forward sufficient admissible evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The evidence must be viewed in the light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991). However, the court may only consider admissible evidence at summary judgment. *Moore v. Indehar*, 514 F.3d 756, 758 (8th Cir. 2008).

## II.   IN MINNESOTA INDEMNITY AGREEMENTS THAT PURPORT TO SHIFT AN EMPLOYERS' WORKERS COMPENSATION RISK TO A THIRD PARTY ARE VOID AS A MATTER OF PUBLIC POLICY

All Jersey disagrees that the language of the indemnity provision requires All Jersey to indemnify Target for these six workers' compensation claims. Even if Target's

interpretation of the scope of the indemnity provision is correct, the provision is unenforceable because it is void as a matter of public policy in Minnesota.

In *D.W. Hutt Consultants, Inc. v. Construction Maintenance Systems, Inc.*, the court of appeals held that an indemnity agreement was unenforceable when an employer who failed to obtain workers compensation insurance sought indemnity for expenses the employer was liable for under Minnesota's Workers Compensation Act. 526 N.W.2d 62, 64 (Minn. Ct. App. 1995). The court reasoned:

> The purpose of the Workers Compensation Act is to provide security for individuals in the workforce and to shift economic loss to industry and the public by holding employers strictly liable for work-related injuries sustained by their employees. To further this purpose, every employer must carry workers compensation insurance or seek a written exemption permitting self-insurance. Allowing a general contractor to shift its workers compensation expenses by means of an indemnification provision would contravene the public policy embodied in the Workers Compensation Act to require employers to bear the burden of their employees' work-related injuries.

*Id.* at 65.

The court determined that the burden to provide workers compensation benefits belonged to employers as a matter of public policy. The court additionally stated that "[*w*]*here, as a matter of public policy, the legislature has already decided who shall bear the risk of loss, the parties to a contract are not free to place that risk on someone else.*" *Id.* As part of the reason for this public policy, the court stated that "[a]llowing indemnification in this case might also create an incentive for employers to forego purchasing insurance for their employees as required by law. *Id.* (emphasis added).

The holding in *D.W. Hutt* is consistent with other cases under Minnesota law where courts have refused to enforce contractual indemnity provisions on public policy grounds where the provision would effectively shift a non-delegable legal duty from one party to another.[3]   In the context of the employer-employee relationship, it is well established that "the duty to provide safe equipment or a safe workplace ***is a non-delegable duty belonging solely to the employer***." *Wood v. Korn*, 503 N.W.2d 523, 525 (Minn. Ct. App. 1993), *review denied* (Minn. Aug. 24, 1993) (emphasis added); see also *Nelson v. Rodgers Hydraulic, Inc.*, 351 N.W.2d 36, 38 (Minn. 1984) (same).

Target does not even acknowledge the *D.W. Hutt* decision in its moving papers. In an apparent effort to distinguish this case from *D.W. Hutt,* Target states that it "did not wholly pass off its workers' compensation obligations onto All Jersey, but rather it paid the benefits that were due and only turned to All Jersey for indemnification under the parties valid and enforceable agreement."   (*See* Target Mem. of Law at p. 18).   Target is attempting to do precisely what Minnesota Court of Appeals prohibited in *D.W. Hutt*. Contrary to the Minnesota Legislature's determination that employers must bear the risk of workers compensation loss, Target is blatantly attempting to shift the risk to All Jersey.  As the court of appeals stated in *D.W. Hutt*, "The parties to a contract are not free to place that risk on someone else."  *Id.*, 526 N.W.2d at 64.

---

[3] See, e.g., *Yang v. Voyagaire Houseboats, Inc*., 701 N.W.2d 783, 791 (Minn. 2005) (inn-keeper's duty of care could not be shifted by indemnity agreement); *Zerby v. Warren*, 201 N.W.2d 58, 61-64 (Minn. 1973) (retailer could not use indemnity provision in its contract with manufacturer to delegate the retailer's statutory duty to not sell glue to purchasers under age 19); *U.S. v. J&D Enters. of Duluth*, 955 F.Supp. 1153, 1157 (D.Minn. 1997) (asbestos removal contractor had absolute duty to comply with Clean Air Act and was not allowed to be contractually indemnified for civil penalties resulting from violations of the Act).

It does not matter if Target originally paid these workers compensation claims. The court's holding in *D.W. Hutt*, the legislature's intent "to provide security for individuals in the work force and to shift economic loss to industry and the public by holding employers strictly liable for work-related injuries" and the employer's non-delegable duty to provide a safe workplace – to suggest that these factors lose all legal significance at the moment when an employer pays its workers' compensation premium is not a reasonable argument. Therefore, for all of these reasons, the contractual indemnity provision relied upon by Target is unenforceable as a matter of public policy with respect to the workers' compensation liabilities at issue in this lawsuit.

## III.  THE INDEMNITY PROVISION IS UNENFORCEABLE BECAUSE IT VIOLATES MINN. STAT. CH 337

### A.  The Housekeeping Contract Between Target and All Jersey Is A Contract For The Maintenance of Real Property Under The Plain Meaning of Minn. Stat. § 337.01, Subd.2

The next issue before the court is whether the indemnity agreement in the subcontract between Target and All Jersey is valid under Minnesota Statutes chapter 337. That chapter governs indemnity agreements in "building and construction contracts." Minn. Stat. § 337.01. Analyzing the validity of the subcontract requires statutory construction of certain provisions of chapter 337.

Minnesota courts have stated that "the touchstone for statutory interpretation is the plain meaning of the statute's language." *Krueger v. Zeman Construction Co.*, 758 N.W.2d 881, 885 (Minn. Ct. App. 2008) (quoting *ILHC of Eagan v. County of Dakota*, 693 N.W.2d 412, 419 (Minn. 2005)). If that intent is clear from the plain and

unambiguous language of the statute, this court will apply the plain meaning of the statute. *Eclipse Architectural Group, Inc. v. Lam*, 799 N.W.2d 632, 636 (Minn. Ct. App. 2011), review granted (Aug. 16, 2011), *aff'd*, 814 N.W.2d 692 (Minn. 2012) citing *Am. Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 312 (Minn.2001).   "Under the basic canons of statutory construction, we are to construe words and phrases according to rules of grammar and according to their most natural and obvious usage." *Id.*  (quoting *ILHC of Eagan, LLC v. Cnty. of Dakota,* 693 N.W.2d 412, 419 (Minn.2005)).   "***When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.***"   *See* Minn. Stat. § 645.16, *see also Midland Credit Mgmt. v. Chatman*, 796 N.W.2d 534, 535 (Minn. Ct. App. 2011)

The statute defines a "building and construction contract" as "a contract for the design, construction, alteration, improvement, repair or maintenance of real property, highways, roads or bridges.  The term does not include contracts for the maintenance or repair of machinery, equipment or other such devices used as part of a manufacturing, converting or other production process, including electric, gas, steam, and telephone utility equipment used for production, transmission or distribution purposes." Minn. Stat. § 337.01, subd. 2.   The Target/All-Jersey contract falls within the definition of a "building and construction contract" because it was a contract for the "maintenance of real property."

When analyzing the plain and ordinary meaning of words in a statute, courts have deemed it appropriate to consider dictionary definitions.  *State v. Peck*, 773 N.W.2d 768,

772 (Minn. 2009).   "Maintenance" is defined as "the work of keeping something in proper condition; upkeep." *American Heritage Dictionary of the English Language, 4th ed.* (Houghton Mifflin Co. 2000).   "Real property" is defined as "land, and generally whatever is erected or growing upon or affixed to land." *Black's Law Dictionary, 5th ed.* (West 1979). The contract specified that All-Jersey would provide "housekeeping" services at a number of Target's stores. (Kuderer Aff., Ex. A at p.1, ¶ 2). "Housekeeping" is defined as "management and maintenance of the property and equipment of an institution or organization." *American Heritage Dictionary of the English Language, 4th ed.* Thus, "housekeeping" services fall within the definition of "maintenance."  Target's retail stores constitute "real property" because those buildings are erected upon land.  Because it fits within the plain meaning of the words "maintenance of real property," the contract between Target and All Jersey for the performance of "housekeeping" services is a "building and construction contract" under Minn. Stat. § 337.01, subd. 2.

Further, the Minnesota Legislature set forth a list of types of contracts that are *not* included within the definition of "building and construction contract" including the maintenance and repair of machinery and other equipment.  Minn. Stat. § 337.01, subd. 2. However, the Minnesota Legislature specifically included "maintenance of real property" as a contract that was included under Ch. 337.  *Id.*   If the legislature had wanted to exclude the type of maintenance contract between Target and All Jersey "it could have

easily stated that." *See e.g. Midland Credit Mgmt.*, 796 N.W.2d at 536.[4]   However, the Legislature did not exclude, but expressly included contracts for the "maintenance of real property" within the definition of contracts that are subject to Ch. 337.

Target urges this court to apply a strained construction to Minn. Stat. § 337.01, Subd. 2 to find that its contract with All Jersey is not for "maintenance of real property" and therefore outside the scope of Minn. Stat. § 337, *et seq*.   Target is incorrect.   Target relies on an unpublished decision from the Minnesota Court of Appeals in *Potvin v. John Hancock Mut. Life Ins. Co.,* 2000 WL 979138 *2 (July 18, 2000) (unpublished).   *Potvin* is not controlling.   First, *Potvin* is an unpublished Minnesota Court of Appeals opinion with no precedential value. *See* Minn. Stat. § 480A.08, Subd. 3.   Second, the court of appeals' analysis of § 337 in *Potvin* is conclusory.   The court concluded that the statute did not apply without bothering to analyze the definitional part of the statute (Minn. Stat. § 337.01, Subd. 2) which is essential to determining whether the statute applies.   *Potvin v. John Hancock Mut. Life Ins. Co.,* 2000 WL 979138 *2 (July 18, 2000) (unpublished).

Target's construction of Minn. Stat. § 337.01, subd. 2 renders the phrase "maintenance of real property" meaningless.   Statutes must not be interpreted in a way as to render provisions meaningless.   *Am. Tower, L.P. v. City of Grant*, 621 N.W.2d at 42. Target offers no alternative definition for the phrase that makes any sense under the plain language of the statute.   The legislature must have meant something when it drafted the phrase.   Target does not get to pick and choose which phrases in the statute have the

---

[4]   In *Midland Credit*, the court of appeals held that personal injuries proceeds were not exempt from garnishment because the legislature did not include such proceeds in the exemption statute where it could have easily done so.

force of law.  Target's contract with All Jersey is clearly "for the maintenance of real property" under the plain language set forth in Minn. Stat. § 337.01, subd. 2.  Therefore, Minn. Stat. Ch. 337 applies to the indemnity provisions of the contract between Target and All Jersey.

### B.   Application of Minn. Stat. Ch. 337 Establishes That the Contractual Indemnity Provision Relied on By Target Is Unenforceable

Having established that Target and All Jersey's contract is subject to Minn. Stat. Ch. 337, the next step is to apply the remaining provisions of chapter 337.   Minn. Stat. § 337.02 provides in pertinent part:

> An indemnification agreement contained in, or executed in connection with, a building and construction contract is unenforceable except to the extent that: 1) the underlying injury or damage is attributable to the negligent or otherwise wrongful act or omission, including the breach of a specific contractual duty, of the promisor...."

Minnesota courts have acknowledged that this provision reflects a policy choice by the legislature to have each party bear the consequences of its own liability.  *Holmes v. Watson-Forsberg*, 471 N.W.2d 109, 111 (Minn. Ct. App. 1991).  In accordance with that public policy, the plain language of § 337.02 renders indemnity agreements purporting to cover conduct other than the "negligent or otherwise wrongful act[s]" of the indemnitor void.

The indemnity provision in the contract between Target and All Jersey provides that the "Contractor," All Jersey, agrees to:

> …defend, indemnify and hold harmless Target and its agents and employees, from and against (1) any and all claims, suits, losses, damages, judgments or expenses (including attorney's fees incurred in responding to claims or suits), which relate to, arise out of, or are asserted or incurred as a result of,  Contractor's performance

of services, Contractor's failure to perform its obligations under this Agreement, or the negligence or wrongful acts of Contractor or its agents or employees, and; (2) any claims made by Contractor's employees or agents arising out of the performance of Services, provided, however, that the foregoing indemnity obligations shall not apply to any injury, damage or loss to the extent such injury, damage or loss is caused by the sole negligence of Target….

(Kuderer Aff., Ex. A at p. 6).   This contract purports to cover not only the negligent and wrongful acts of All Jersey, but also "any and all claims, suits losses, damages, judgments or expenses...which relate to, arise out of, or are asserted as a result of, [All-Jersey's] performance of Services." *Id.* Under Minn. Stat. § 337.02, this indemnity provision is void to the extent it requires indemnity for both: 1) acts of parties other than All Jersey, its agents or employees; and 2) acts of All Jersey that may not be wrongful or negligent.

Minnesota Stat. §337.02 is a general prohibition on attempts to shift the liability of others through indemnity provisions in contracts for the maintenance of real property. However, § 337.02 does not end the inquiry of whether an indemnity provision may ultimately be enforceable.  Minn. Stat. § 337.05, subd. 1 provides:  "Sections 337.01 to 337.05 do not affect the validity of agreements whereby the promisor agrees to provide ***specific insurance*** for the benefit of others." (emphasis added).  This provision is a "narrow exception" to the prohibition provided by § 337.02.  *Van Vickle v. C.W. Scheurer and Sons, Inc.*, 556 N.W.2d 238, 241 (Minn. Ct. App. 1996).  The Minnesota Supreme Court has stated that, through the exception, the legislature has approved the use of a risk allocation method whereby the parties contract to place the risk of a loss directly related to the work performed under the contract upon an insurer.  *Holmes v. Watson-Forsberg Co.*, 488 N.W.2d 473, 475 (Minn. 1992). Therefore, in order to be enforceable

16

with respect to conduct other than the promisor's own negligent or wrongful acts, an indemnity agreement must be accompanied by an agreement to insure.

The agreement to insure must do more than require insurance in general. The insurance required must be "specific" and it must be "for the benefit of others." *See* Minn. Stat. § 337.05, subd. 1. The phrase "specific insurance for the benefit of others" in § 337.05, subd. 1 should be interpreted in light of the statutory provisions surrounding it, specifically § 337.05, subds. 2 and 4, and it should be presumed the legislature intended the effect of the statutory language. *See Kachman v. Blosberg*, 251 Minn. 224, 229, 87 N.W.2d 687, 692 (1958) ("[i]t is well settled that a particular provision of a statute cannot be read out of context but must be taken together with other related provisions to determine its meaning."). Subdivision 2 provides that indemnification may be had even when a promisor breaches the agreement to insure. Subdivision 4 provides that a promise may have indemnification for deductible amounts from an insurance policy purchased pursuant to the agreement to insure.

In setting the conditions precedent for indemnification, both subdivision 2 and subdivision 4 provide that: 1) the promisor must agree to provide specific types and limits of insurance; and 2) the claim for which indemnification is sought must arise within the scope of the specified insurance.[5] Subdivisions 2 and 4 allow indemnification only as to

---

[5] Minnesota Statute § 337.05, subd. 2 provides in full: Indemnification for breach of agreement. If: a) a promisor agrees to provide specific types and limits of insurance; and b) a claim arises within the scope of the specified insurance; and c) the promisor did not obtain and keep in force the specified insurance; then, as to that claim and regardless of section 337.02, the promisee shall have indemnification from the promisor to the same extent of the specified insurance.

those claims which arise out of scope of insurance the promisor agreed to provide.  These subdivisions inform the meaning of the phrase "specific insurance for the benefit of others."  The logical interpretation of 337.05, subd. 1 is that indemnification which is otherwise prohibited by § 337.02 may be permitted only as to claims that arise out of the scope of the specified insurance that the promisor agreed to provide.

An analysis of whether an indemnity agreement is enforceable as to any given claim must include a determination of what insurance the promisor was required to provide.  It is the language of the contract itself that defines the nature of the insurance the promisor is obligated to provide.  *Seward Housing Corp. v. Conroy Bros. Co.*, 573 N.W.2d 364 367 (Minn. 1998) (citing *R.E.M. IV v. Robert F. Ackerman & Assoc.*, 313 N.W.2d 431, 434-35 (Minn. 1981)).  Courts have most frequently performed this analysis in determining whether indemnification may be had for damages caused by the promisee's own tort liability.

> *Holmes* is one such case.  The underlying dispute was a negligence action brought against a general contractor by its subcontractor's employee.  488 N.W.2d at 474.  The general contractor then sued its subcontractor, the employee's employer, seeking indemnity to the extent of insurance specified in the subcontract agreement.  *Id.* A provision in the *Holmes* subcontract contained the following language:[t]he Subcontractor, to the fullest extent permitted by law, agrees to indemnify and save harmless the Contractor, his agents and employees from all such claims including, without limiting the generality of the foregoing, claims for which the Contractor may be or may be claimed to be, liable...and the Subcontractor agrees to obtain, maintain and pay for such general liability

---

Minnesota Statute § 337.05, subd 4 provides in full:  Indemnification regarding deductible amounts.  If: 1) a promisor agrees to provide specific types and limits of insurance; and 2) a claim arises within the scope of the specified insurance; and 3) the insurance provided by the promisor includes a self-insured retention or a deductible amount; then, as to that claim and regardless of section 337.02, the promisee shall have indemnification from the promisor to the full extent of the deductible or self-insured retention.

insurance coverage and endorsements as will insure the provisions of this paragraph.

The court of appeals read the provision solely as an indemnity agreement, which was unenforceable under § 337.02 and could not be saved by language at the end of the paragraph obligating the promisor to "obtain, maintain and pay for such general liability insurance coverage as will insure the provisions of this paragraph." 471 N.W.2d at 112. However, the supreme court reversed the court of appeals, declaring that contract language obligating the subcontractor to obtain "general liability insurance coverage and endorsements as will insure the provisions of this paragraph" was sufficient to bring the agreement within the scope of § 337.05 for the purpose of the claim for which indemnity was sought. 488 N.W.2d at 475.

Since the Supreme Court's decision in *Holmes*, courts have held that contract language identical or similar to that in *Holmes* to be an enforceable agreement to indemnify and insure the tort liability of the promisee. *See Christenson v. Egan Cos.*, 2010 WL 2161822 (Minn. Ct. App. 2010) (contract language "almost identical" to that in *Holmes* found enforceable with respect to indemnity for personal injury claim against general contractor). However, language in a contract requiring a promisor to obtain "general liability insurance" to insure its indemnity obligations does not always guarantee that an indemnity obligation will be enforceable.

In *R.E.M. IV, Inc. v. Robert F. Ackermann & Associates ("Ackerman")*, the court held that a subcontractor was not required to indemnify a general contractor for the latter's own negligence with respect to damages that occurred after the subcontractor's work was completed. 313 N.W.2d 431 (Minn. 1981). The court noted that the

contractual language required the subcontractor to "obtain maintain and pay for…general liability insurance coverage…" but did not require the subcontractor to obtain completed operations insurance coverage, which insures a different type of risk.   *Id.* at 434-35. *Ackerman* and other Minnesota cases suggest that under Minn. Stat. Ch. 337, not only must an indemnity obligation be supported by an agreement to insure, but that agreement to insure must state the specific risks for which insurance will be provided in support of the indemnity obligation.   *See id.*; *see also Seward Housing Corp. v. Conroy Bros. Co.*, 573 N.W.2d 364, 367 (Minn. 1998) and *Katzner v. Kelleher Construction*, 545 N.W.2d 378 (Minn. 1996).

The obligations for which Target seeks indemnification are not claims of negligence on the part of Target.  In fact, the claims are not a matter of tort liability at all. They are a matter of Target's employees availing themselves of rights afforded to them by their employment relationship with Target and applicable workers' compensation laws.  The relevant inquiry, then, is whether the contract between Target and All Jersey required All Jersey to obtain insurance that would cover Target's workers compensation obligations.

The indemnity paragraph in Target's contract with All Jersey does not contain any insurance requirement.  However, paragraph 13 of the contract sets forth insurance requirements.  This paragraph specifies one type of insurance to provide coverage for All Jersey's indemnity obligations—a commercial general liability policy.  (Kuderer Aff., Ex. A at ¶ 13).  Paragraph 13 required All Jersey to maintain:

> Commercial general liability insurance with minimum limits of liability of $1,000,000 combined single limit per occurrence and $2,000,000 general

aggregate per project. *Such insurance shall provide coverage for completed operations and Contractor's indemnification obligations set forth in this Agreement.*

*Id.* (emphasis added). Commercial general liability policies insure for tort liability risks and exclude risks that are covered by a workers' compensation insurance policy. The contract requires All Jersey to obtain workers' compensation coverage ***for its own employees***. (Kuderer Aff., Ex. A at § 13). The contract did not require All Jersey to obtain workers compensation coverage that provided coverage for claims made by Target employees. The obligation for which Target seeks indemnity is not enforceable under Minn. Stat. § 337.05 because the claim does not "arise[] out of the specified insurance" in the contract. Therefore, Target's motion for summary judgment must be denied.

## IV.    THE INDEMNITY PROVISION IN THE    CONTRACT ONLY REQUIRES INDEMNITY "TO THE EXTENT" THE INJURY  IS NOT CAUSED BY "THE SOLE NEGLIGENCE" OF TARGET

The determination of which claims the subcontractor must indemnify under the contract language requires two separate inquiries. *Ackerman*, 313 N.W.2d at 433. First, it must be determined which party's negligent acts caused the damage for which indemnity is promised. *Id.* Second, the scope of indemnity must be determined. *Id.* Thus, even if it is determined that the contractual language requires All Jersey to indemnity Target for liabilities arising from Target's own negligence, that does not mean that all acts and omissions by All Jersey are subject to indemnification without regard to cause or negligence. We must look to the terms of the contract to ascertain whether the request for indemnity falls within the scope of the indemnity provision.

21

Here, the indemnity provision contains the following limiting language: "the foregoing indemnity obligations shall not apply to any injury, damage or loss ***to the extent*** such injury, damage or loss ***is caused by the sole negligence***"of Target. (Kuderer Aff., Ex. A at p. 6). (emphasis added). Minnesota courts have held the language "to the extent," when used in a contractual indemnity provision, suggests comparative fault principles. *Braegelmann v. Horizon Development Co.*, 371 N.W.2d 644 (Minn. Ct. App. 1985). As a result, in order for the indemnity provision to apply in this case Target must establish that it, or its employees, were **not *solely negligent***.[6] Target simply assumes that its employees were not at fault. This is a fact determination that must be made by the jury in each individual case. For example, a jury considering any one of these accidents could determine the negligence of a Target employee (such as the injured claimant) was the sole cause of the accident. If this were the case, the indemnity provision would not apply. Therefore, genuine issues of material fact exist regarding the apportionment of fault in this case and Target's motion for summary judgment must be denied on this basis alone.

---

[6] It is well settled law in Minnesota that the fault of an employee for acts in the course of employment is imputed to the employer. *Edgewater Motels, Inc. v. Gatzke*, 277 N.W.2d 11, 15 (Minn. 1979); *Ismil v. L.H. Sowles Co*., 295 Minn. 120, 123, 203 N.W.2d 354, 357 (1972); *Porter v. Grennan Bakeries, Inc*., 219 Minn. 14, 18–19, 16 N.W.2d 906, 908–09, (1944)

**V.  EVEN IF THE INDEMNITY PROVISION IS ENFORCEABLE, THERE IS NO ADMISSIBLE EVIDENCE TO ESTABLISH THAT THE FACTUAL CIRCUMSTANCES FALL WITHIN THE SCOPE OF INDEMNITY PROMISED IN THE AGREEMENT.**

As explained above, a court analyzing a contractual indemnity claim must determine whether the acts giving rise to the claim fall within the scope of indemnity. *Ackermann*, 313 N.W.2d at 433.   All Jersey's indemnity obligations under the contract are purportedly triggered by claims "which relate to, arise out of or are asserted or incurred as a result of" All Jersey's performance of Services, failure to perform the contract, or negligent or wrongful acts.   (Kuderer Aff., Ex. A at ¶ 11).  Minnesota courts have construed the phrase "arising out of" to require a temporal and geographical or causal connection between the injury and the indemnitor's work to trigger the indemnity obligation.  *Anstine v. Lake Darling Ranch*, 305 Minn. 243, 233 N.W.2d 723 (1975).  In other words, as Target concedes, there must be a "but for" causal connection between the injury and the indemnitor's work.  (*See* Target Mem. of Law. at p. 12).

*Christiansen v. Riscomp Industries, Inc.*, 1999 WL 410355 (Minn. Ct. App. 1999) illustrates the causation required to establish the right to indemnity under similar factual circumstances.  In *Christiansen*, a plaintiff sued the owner of Burnsville Center and its janitorial services contractor for injuries she sustained in a slip and fall at the entrance to the mall.  The plaintiff claimed the floor was wet when she fell.  *Id.* at p. 1.  She did not offer testimony which explained what caused the floor to be wet.  The mall owner cross-claimed against the contractor seeking contractual indemnity. *Id.*

The janitorial service contract in *Christiansen* required the contractor to "[d]amp mop entire [entrance] area as needed" daily and give "[p]riority to wet or dry spills." *Id.* at p. 1. The indemnification provision required the contractor to:

> 'Indemnify, defend and hold [the Mall] harmless from and against any claim…liability, damage or expense (including attorneys' fees) that [the Mall] may incur relating to, arising out of or existing by reason of ' *the contractor's performance or nonperformance of the contract. Id.* The contractor was also obligated to maintain insurance coverage:
> 'against all claims, demands or actions for bodily injury or property damage arising from, related to or in any *way connected with the conduct and operation of [Contractor's] business, or caused by actions or omissions to act where there is a duty to act.*'

*Id.* (emphasis added). The court of appeals held that the contractor had only agreed to indemnify the Mall for claims "relating to, arising out of or existing by reason of the contractor's performance or nonperformance of the contract." *Id.* Because the cause of the wet floor was unknown, the court held that a fact question existed as to whether the plaintiff's slip-and-fall claim fell within the scope of the indemnity agreement (the performance or nonperformance of services). *Id. p. 3.* The court reasoned:

> If water accumulated or was pooled, puddled, or standing on the floor prior to [the plaintiff's] fall, her claim would fall within the scope of duties under the vendor contract, which obligated [the janitorial service contractor] to "[d]amp mop [the entrances] as needed" and to give "[p]riority to wet…spills." If the water came from [the plaintiff's] shoes because she failed to wipe her feet adequately, her claim is not related to [the janitor's] duties. If Christiansen fell because of some action or inaction on [the Mall's] part, such as [the Mall's] failure to place mats near the entrance, her claim is not related to [the janitor's] duties.

*Id.*

Consistent with the court's ruling in *Christiansen*, Target bears the burden of proving that: 1) the cause of the claimants' accidents was a wet/slippery floor; and 2) the

areas in which the claimants fell were wet/slippery because of All Jersey's action or inaction in performing contractual cleaning services.  The evidence offered by Target is totally inadequate to establish these two points because it is thin on substance and inadmissible.

"Only admissible evidence may be considered in deciding such a motion pursuant to Federal Rule of Civil Procedure 56."  *ADT Sec. Services, Inc. v. Swenson*, 276 F.R.D. 278, 328 (D. Minn. 2011), reconsideration denied (May 23, 2011).  Here, instead of admissible sworn testimony or affidavits from the injured parties and knowledgeable eyewitnesses, Target has offered a small number of emails, handwritten statements and transcribed telephone interviews.  (Kuderer Aff., Ex. J, L, M, N, O, P, V, and W).

Here are the reasons why each of Target's exhibits is inadmissible:

The email messages. (Kuderer Aff., Ex. J and O).  Both of these exhibits contain email messages that have not been authenticated by authors or recipients.  No foundation has been laid to establish that the author of each message had personal knowledge of the factual information stated in the messages.  Furthermore, all of these email messages are out-of-court statements offered for the truth of the factual matters asserted –they amount to "hearsay" under Fed.R.Evid. 801 which is generally inadmissible under Fed.R.Evid. 802.

The short handwritten statements of April Williams, Devine Jayle, and Tanya Hill. (Kuderer Aff., Ex. L-O).  These handwritten statements suffer from the same evidentiary deficiencies.   First, the written statements have not been authenticated.   Second, appropriate foundation has not been laid to establish that each alleged witness had

personal knowledge of the circumstances of the accidents they witnessed.  Third, Target is offering these out-of-court statements to prove the truth of the matters asserted, which is inadmissible as hearsay pursuant to Fed.R.Evid. 801-802.

The transcribed telephone interviews. (Kuderer Aff., Ex. P, V and W).  Target's third-party claims administrator (Sedgwick) attempted to transcribe interviews with Michilene Hackett, Diana Arango, and Marva Lewis.  These interviews were collected telephonically without placing each witness under oath.  These witnesses have not authenticated these transcripts as words of their own.  Furthermore, it is self-evident from the two Arango transcripts (Ex. V) that all of the interview statements attributed to Ms. Arango were indeed made by her workers' compensation attorney and her daughter, who acted as informal interpreters for her.   Furthermore, all of the transcripts are being offered to prove the truth of the matters asserted in the interviews, which means they are hearsay.

Even if we ignore the inadmissibility of the exhibits offered by Target, they lack the substantive information that is necessary to establish the causal nexus for each of these six indemnity claims.   The exhibits show that each claimant slipped and fell, but they provide precious little information about how the floors came to be slippery.

Here is a brief survey of the evidence concerning each claim.  Target provides no information whatsoever regarding the accident which injured Beverly Hightower. Claimant Diana Arango thought that she slipped on wax, but her recorded statement does not show that the liquid she slipped in was wax.  (Kuderer Aff., Ex. V at p. 3).

Marva Lewis said she slipped while the cleaning crew was waxing the floor, but she also stated that the area she slipped in was beyond the area marked off for the cleaning crew's work, and, that she did not know whether she slipped on wax or water. (Kuderer Aff., Ex. W at pp. 2-3).

The only information provided about Deliah Giddings' accident comes from a written statement by a witness identified only as "Tanya," who said Giddings slipped on water from a cleaning machine. (Kuderer Aff., Ex. N).   However, there are no facts indicating how "Tanya" knew the water was from a cleaning machine.

There was no recorded statement provided regarding Lynda Russo's accident.  An email message apparently authored by Target employee Laurie Lombardo states that "the cleaning crew cleaned the carpet" on the night before Ms. Russo's accident and on the morning of the accident the carpet was "damp" but the tile floor next to the carpet was "not wet."  (Kuderer Aff., Ex. O).   Ms. Lombardo's email message is silent regarding the circumstances and events at the time of Russo's accident, as is the remainder of the record which Target submitted in support of its motion.

Michilene Hackett did not actually know the cause of her fall. Ms. Hackett said in her recorded statement that her fall was caused by water on the floor, but she did not see it before she fell.  (Kuderer Aff., Ex. P at p. 4).   She did not know how water came to be on the floor. *Id.*

These six cases cannot be lumped together factually.  Some of the claimants say that there was water on the floor where they fell; some say there was wax on the floor. Others do not even know the cause of their falls.  These cases need to be individually

scrutinized to determine whether a causal nexus exists between All Jersey's work and the accidents. On the thinly supported record above, there is no proof that each of the six slip-and-fall accidents was causally related to the performance or non-performance of All Jersey's work. Accordingly, Target has failed to establish that there are no genuine issues of material fact, and, that the company is entitled to judgment as a matter of law on its contractual indemnity claims.

## **CONCLUSION**

Based on each of the arguments above, Plaintiff Target Corporation's motion for summary judgment must be denied.

TOMSCHE, SONNESYN & TOMSCHE, P.A.


Dated: October 5, 2012                    /s/Matthew R. Smith
                                          Michael J. Tomsche (#0213512)
                                          Matthew R. Smith (#0322908)
                                          610 Ottawa Avenue North
                                          Minneapolis, Minnesota 55422
                                          Telephone: (763) 521-4499

                                                -and-

                                          ARTHUR, CHAPMAN, KETTERING,
                                          SMETAK & PIKALA P.A.
                                          Eugene C. Shermoen (#183246)
                                          Timothy J. Carrigan (#338412)
                                          81 S. Ninth Street, Suite 500
                                          Minneapolis, Minnesota 55403
                                          Telephone:  (612) 339-3500

                                          *Attorneys for Defendant*
                                          *All Jersey Janitorial Service, Inc.*