UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Target Corp.,

    Plaintiff,

v.                                                            Civil No. 11-2429 (JNE/LIB)
                                                            ORDER

All Jersey Janitorial Service, Inc.,

    Defendant.

Plaintiff Target Corp. brought an action against defendant All Jersey Janitorial Service, Inc., claiming that All Jersey failed to indemnify Target under a contractual indemnification provision for expenses arising out of the performance of All Jersey's services. The case is before the Court on the parties' cross-motions for summary judgment. For the reasons set forth below, the Court denies both motions.

**I.    BACKGROUND**

In 2005, Target entered into the Target Corporation Building Services Service Agreement (the Agreement) with All Jersey where All Jersey assented to perform housekeeping services for Target. The Agreement contains the following indemnification provision:

> Except as provided herein, [All Jersey] agrees to assume responsibility for all injuries or damages to persons or property which relate to or arise out of [All Jersey]'s performance of Services, [All Jersey]'s failure to perform its obligations under this Agreement, or the negligence or wrongful acts of [All Jersey] or its agents or employees. [All Jersey] . . . shall defend, indemnify, and hold harmless Target and its agents and employees, from and against (1) any and all claims, suits, losses, damages, judgments or expenses (including attorney's fees incurred in responding to claims or suits) which relate to, arise out of, or are asserted or incurred as a result of, [All Jersey]'s performance of Services, [All Jersey]'s failure to perform its obligations under this Agreement, or the negligence or wrongful acts of [All Jersey] or its agents or employees; and (2) any claims made by [All Jersey]'s employees or agents arising out of the performance of Services; provided,

1

> however, that the foregoing indemnity obligations shall not apply to any injury, damage or loss to the extent such injury, damage or loss is caused by the sole negligence of Target.

The Agreement states that it is governed by Minnesota law. The Agreement was amended several times, but the indemnity provision remained the same.

Between 2006 and 2010, six of Target's employees were injured in slip-and-fall accidents and received workers' compensation benefits from Target. Subsequently, Target filed a Complaint against All Jersey under diversity jurisdiction, alleging that All Jersey refused to pay over $380,000 owed to Target under the Agreement because Target had paid and continued to pay workers' compensation claims for those six employees who were injured when they slipped and fell on floors that All Jersey had washed or waxed.

## II.     TARGET'S MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact either cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," but "a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(1)(A), (2). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Target argues that neither Minnesota's anti-indemnity statute, Minn. Stat. § 337.02 (2012), nor public policy render the Agreement's indemnity provision unenforceable. Target also argues that it is entitled to summary judgment because there is no genuine issue of material fact

that the six employees' injuries arose out of the performance of All Jersey's services and are thus subject to the Agreement's indemnity provision.

### A. Enforceability of the Agreement's Indemnity Provision

### 1. Minnesota's Anti-Indemnity Statute

Minnesota's anti-indemnity statute renders indemnity provisions contained in "a building and construction contract" unenforceable except to the extent that the underlying damage or injury is attributable to the promisor's own negligence or wrongful act. Minn. Stat. § 337.02. The statute defines a "building and construction contract" as "a contract for the design, construction, alteration, improvement, repair or maintenance of real property, highways, roads or bridges." Minn. Stat. § 337.01, subd. 2 (2012). Target argues that the Agreement, which is a contract for housekeeping services, is not a "building and construction contract" and therefore Minnesota's anti-indemnity statute is not applicable. On the other hand, All Jersey asserts that a housekeeping contract is "a contract for the . . . maintenance of real property," the Agreement is therefore a "building and construction contract" to which the anti-indemnity statute applies, and the anti-indemnity statute renders the Agreement's indemnity provision unenforceable.

In interpreting Minnesota law, federal courts are bound by the decisions of the Minnesota Supreme Court, but when the Minnesota Supreme Court has not decided an issue, federal courts must predict how the Minnesota Supreme Court would resolve the issue. *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006). Federal courts may consider decisions of state intermediate appellate courts to be persuasive authority if those decisions "are the best evidence of what state law is." *Id.* Here, the Minnesota Supreme Court has not addressed the scope of the definition of "building and construction contract" in Minn. Stat. § 337.01, subd. 2. But the Minnesota Court of Appeals briefly addressed whether a contract for snow and ice

3

removal would fall under the anti-indemnity statute in the unpublished case *Potvin v. John Hancock Mutual Life Insurance Co.*, No. C0-00-35, 2000 WL 979138, at *1, 3 (Minn. App. July 18, 2000). There, the court of appeals concluded that construing a snow-and-ice removal contract to fall within the purview of the anti-indemnity statute would "extend the statute into contracts where the legislature did not intend for it to control." 2000 WL 979138 at *3. The court of appeals did not engage in any analysis before reaching its conclusion, and *Potvin* has never been cited by any court. Therefore, the Court does not place much weight on *Potvin* and will turn to statutory interpretation to determine how the Minnesota Supreme Court would likely resolve the issue of whether a housekeeping contract is a "building and construction contract."

Under Minnesota law, statutory interpretation begins with a determination of whether the language of a statute is ambiguous. *Eclipse Architectural Grp., Inc. v. Lam*, 814 N.W.2d 692, 700 (Minn. 2012). "A statute is ambiguous if it is reasonably susceptible to more than one interpretation." *Id.* at 701 (quotation omitted). When a statute's words are unambiguous, courts construe those words according to their common usage. *Id.* Courts also read and construe a statute as a whole. *Id.* Only when the language of the statute is unclear or ambiguous will courts look beyond the language to determine legislative intent. *Emerson v. Sch. Bd. of Indep. Sch. Dist. 199*, 809 N.W.2d 679, 684 (Minn. 2012).

A housekeeping contract could be encompassed by the phrase "a contract for the . . . maintenance of real property" if that phrase was read in isolation from the remainder of the definition of "building and construction contract." But the Court cannot pluck a phrase from a statute and interpret it independently of the surrounding words. The Court must read a statute as a whole. *See Eclipse Architectural Grp.*, 814 N.W.2d at 701. Here, the word "maintenance" is preceded by "design, construction, alteration, improvement, [and] repair." Minn. Stat. 337.01,

subd. 2. These words apply to construction-industry projects, not housekeeping projects. Moreover, the preface to the session law that enacted chapter 337 shows that the legislature intended chapter 337 to apply only to construction-industry projects; the preface states that chapter 337 is an act "prohibiting the enforcement of indemnification agreements in construction contracts." 1983 Minn. Laws 2135. The plain language of section 337.01, subdivision 2, and the prefatory language of the session law show that "a contract for the . . . maintenance of real property" in the definition of "building and construction contract" does not include a housekeeping contract. Furthermore, the parties have not identified, and neither can the Court find, any case that has applied Minnesota's anti-indemnity statute to a housekeeping contract. The Court concludes that the Agreement is not a "building and construction contract" and therefore Minnesota's anti-indemnity statute does not apply to the Agreement.

## 2. Public Policy

The Minnesota Court of Appeals made unenforceable an indemnity provision for public policy reasons in *D.W. Hutt Consultants, Inc. v. Construction Maintenance Systems, Inc.*, 526 N.W.2d 62, 65 (Minn. App. 1995). In that case, a general contractor entered into an agreement with a subcontractor to install siding. 526 N.W.2d at 63. The subcontractor hired another company to supply labor, and that company employed a laborer. *Id.* That laborer eventually became an employee of the general contractor and was injured on the job. *Id.* The general contractor did not have workers' compensation insurance, so the employee was paid out of Minnesota's special compensation fund. *Id.* The general contractor was required to reimburse the special compensation fund, and it sued the subcontractor under the agreement for indemnification. *Id.* The court of appeals framed the issue as whether the general contractor could seek "indemnification for expenses related to a workers' compensation claim by an injured

employee where it failed to meet its statutory duty to acquire workers' compensation insurance." *Id.* at 65. After reviewing the purpose of the Minnesota Workers' Compensation Act, the court broadly stated, "Allowing a general contractor to shift its workers' compensation expenses by means of an indemnification provision would contravene the public policy embodied in the Workers' Compensation Act to require employers to bear the burden of their employee's work-related injuries." *Id.* The court then stated: "Where, as a matter of public policy, the legislature has already decided who shall bear the risk of loss, the parties are not free to place that risk on someone else." *Id.* The court held that the indemnification provision was unenforceable "where [the employer] has failed to acquire workers' compensation insurance as required by law and is seeking indemnification for expenses for which it is responsible under the Workers' Compensation Act." *Id.* at 66.

Target argues that *D.W. Hutt* is distinguishable because the employer in *D.W. Hutt* failed to obtain workers' compensation insurance, as required by law. Target argues, and All Jersey does not dispute, that Target holds workers' compensation insurance and has paid benefits to its injured employees. Target asserts that it is now seeking compensation from All Jersey pursuant to the Agreement's valid indemnity provision. All Jersey, on the other hand, argues that the Agreement's indemnity provision impermissibly shifts an employer's workers' compensation risk to a third party. All Jersey asserts that according to *D.W. Hutt*, the legislature has already decided that employers should bear the risk of loss of an employee's on-the-job injury and that employers cannot contractually shift that risk to another.

The Court agrees with Target that *D.W. Hutt* is distinguishable and limited to its facts. In that case, the court's holding was focused on the employer's failure to obtain the statutorily required workers' compensation insurance. *Id.* Consequently, the employee's workers'

6

compensation benefits were paid from the state's special compensation fund, a backstop created by the legislature to compensate employees when their employers do not hold workers' compensation insurance. *See* Minn. Stat. § 176.183, subd. 1 (2012). Although it had not purchased the required insurance, the employer in *D.W. Hutt* tried to shift its workers' compensation duties to repay the special compensation fund to a third party through a contractual indemnity provision. By making the indemnity provision unenforceable, the court ensured that employers could not evade their statutory duties under the Workers' Compensation Act simply by entering into a contractual indemnification provision with a third party. Here, the parties do not dispute that Target has purchased workers' compensation insurance, has paid benefits to its injured employees, and is seeking indemnification from All Jersey pursuant to the Agreement's indemnity provision. The Agreement's indemnity provision simply increases the risk to the party who is responsible for an employee's injury. At oral arguments, All Jersey was unable to identify for the Court a serious public policy that would be contravened if All Jersey indemnified Target.

The Court concludes that neither the anti-indemnity statute nor public policy render the Agreement's indemnity provision unenforceable. [1]

### B. Target's Employees' Injuries

Target argues that it is entitled to judgment as a matter of law because there is no genuine issue of material fact that the six employees' injuries arose out of the performance of All Jersey's services and are thus subject to the Agreement's indemnity provision. To support its summary judgment motion, Target submits declarations containing hearsay and unauthenticated transcripts of telephone interviews, emails, handwritten notes, and medical records. Rule 56 requires a party asserting that a fact cannot be genuinely disputed to support its assertion by "citing to particular

---

[1] Target did not move for partial summary judgment. *See* Fed. R. Civ. P. 56(a) (allowing a party to moving for summary judgment on a "part of each claim").

parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). But "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56 advisory committee notes.

All Jersey argues that Target has not presented evidence in a form that would be admissible in evidence, and the Court agrees. Target's evidence is either unauthenticated, is hearsay, or contains hearsay, and at the oral argument Target's counsel did not explain to the Court how the evidence could be presented in an admissible form. Because Target supported its assertions that there is no genuine issue of material fact with evidence that could not be presented in an admissible form, the Court denies Target's motion for summary judgment.

### III. ALL JERSEY'S MOTION FOR SUMMARY JUDGMENT

All Jersey also moves for summary judgment,[2] arguing that Minnesota's anti-indemnity statute and public policy render the Agreement's indemnity provision unenforceable. But as previously stated, Minnesota's anti-indemnity statute does not apply to the Agreement, and public policy does not make the Agreement's indemnity provision unenforceable.

All Jersey also argues that it is entitled to summary judgment because Target has failed to offer evidence that would be admissible that the six employees' injuries arose out the performance of All Jersey's services. Consequently, All Jersey argues, Target cannot establish an essential element of its claims. Although the Court agrees that Target has failed to submit evidence that would be admissible, the Court declines to grant summary judgment in All Jersey's

---

[2] All Jersey filed a Motion for Summary Judgment and to Sever Claims on September 25, 2012. All Jersey decided not to pursue its motion to sever claims and subsequently filed an Amended Motion for Summary Judgment on October 18, 2012.

favor. *See* Fed. R. Civ. P. 56(e) (stating that if a party fails to properly support an assertion of fact, a court may issue any appropriate order). Discovery does not close for nearly six months. Because this case is in its early stages, the Court concludes that it would be premature to grant summary judgment in All Jersey's favor solely because Target has failed to support its claims with evidence in a form that would be admissible.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Target's motion for summary judgment [Docket No. 11] is DENIED.
2. All Jersey's amended motion for summary judgment [Docket No. 25] is DENIED.

Dated: January 7, 2013

s/Joan N. Ericksen  
JOAN N. ERICKSEN  
United States District Judge